Our next case for argument this morning is United States v. Khan, 19-8051. We're ready to hear from counsel. Thank you, Your Honor. May it please the Court. Nabeel Khan is serving a 181-month sentence based on his role as an assistant in his brother, Dr. Shaquille Khan's medical clinic. We briefed three arguments for reversal. I hope today to focus on one, and that's the error in the jury instructions. That error arose because the district court, over Nabeel Khan's objection, instructed the jury that good faith only was relevant to determining Shaquille Khan's guilt. That left Nabeel Khan in a situation where his central defense was undercut. It made it easier for the government to convict Nabeel than his physician brother, and it wrongly indicated that good faith was not relevant in determining Nabeel's guilt. So in focusing on that, there are really three pieces. Counsel, on the good faith defense, don't we look at least in part when we're talking about medical practitioners, we're looking at their good faith in applying their medical training and treating for a proper purpose, and then also following what is the usual practice in medicine. Since your client is not a doctor, how does that fit with him? So your honor, I think this court went a long way to resolving that in the Laverne case by making it very clear that the knowledge requirement, when the government chooses to reach beyond the doctor who's in the best situation to know whether they're in or outside the boundaries of medicine, when the government pursues such a case, it has to meet the same guilty knowledge requirement, and that's what good faith goes to. So it would start with Laverne. But from a more practical standpoint... Isn't your client very different from Laverne? Not on that... That is his involvement in this selling of prescriptions? Your honor, not in the context of whether he'd be entitled to a good faith instruction, because the issue there is whether he presented sufficient evidence to present the defense, and there was ample evidence to support that defense in this case, particularly... Your honor, are you challenging whether the instructions were insufficient or in error as regards the elements that needed to be proven for conspiracy, which was his charge? Correct. He and Dr. Kahn both were prescribed for conspiring to violate the Controlled Substances Act. And under Laverne, that means that Nabeel also needed to know that the prescriptions were written outside the boundaries of legitimate medicine. And this instruction goes directly to that question. Because if he, unlike the doctor who makes the prescriptions, Nabeel was not in the room when prescriptions were written. He had no prior experience in medical clinics. He should have had the opportunity to argue fully to the jury that he relied in good faith on his brother to stay within the boundaries of medicine. And it's really important in cases like this, your honor. Was that argued? I mean, obviously the government, according to the elements set out in the instruction, had to show that he knew, that he knowingly participated in this conspiracy. And so was that argument made that you just voiced to the jury? Yes, your honor. Nabeel's trial counsel did everything possible to preserve this issue. The district court first proposed instructions that were lopsided in favor of Dr. Kahn on this issue. Nabeel filed a written objection and a proposed instruction that, like Dr. Kahn, was modeled on Judge Martin's instructions in the case of United States v. Martin. The district court then arrived the morning of the jury instruction conference and, in his words, said, I pulled a surprise on all counsel and have prepared my own good faith instruction. That instruction was again limited and specifically stated that good faith was only relevant to Dr. Kahn. And then trial counsel again objected. And then throughout the trial, the centerpiece of Nabeel's defense was that he didn't know enough to evaluate the prescribing decisions and therefore had to rely in good faith on Dr. Kahn to properly prescribe. And in terms of an example, if you'd like to see where good faith was specifically elicited in a cross examination by trial counsel, Shana Voss was Dr. Kahn's stepdaughter and worked in the clinic as well. And just as one example, Nabeel's trial counsel went through with her many of the simple basic tasks that Nabeel performed at the clinic and elicited from her that she did the same tasks, asked her if it was in good faith. She confirmed that it was. Mr. Baker, along the same lines, let me let me put the related question on this good faith instruction. Is it your argument on appeal that the district court erred by not giving the precise instruction that was proposed? Or is your argument that the district court should have given some good faith instruction because it gave one for Dr. Kahn? Do you understand the difference that I'm asking you about? I absolutely, absolutely do, Your Honor. And my argument is the latter. And if it's the latter, I'm back to Judge Briscoe. Where was that argument made in the district court? I mean, there was a specific instruction proposed, but was there ever an argument that my client has to have an instruction because the doctor got one? Yes, Your Honor. Well, not in that precise words, but immediately after the judge said that he had pulled a surprise on counsel and drafted his own instruction, trial counsel's response was again to object and say a good faith instruction is important as he is not being held to the same standard as a doctor. And that emphasized that if you were going to do it for Dr. Kahn, you at least needed to do it for Nabeel. Counsel, that sounds to me like what he said was not that Dr. Kahn's getting one, so I should get one, but that he needed one because of the nature of the government's burden of proof. So, I mean, isn't there a distinction there between what Judge Matheson asked you and what the objection was below? There's a bit of a distinction because it doesn't use the exact words, but the point that Nabeel's counsel was making throughout was he has to be treated at least equal to Dr. Kahn because he's in a less advantageous position to evaluate the nature of the prescribing decisions underlying the convictions. Did the jury have to basically decide this subjective good faith issue in finding him guilty anyway? Because how could he have knowledge if he didn't know, I mean, if he wasn't acting in good faith? Judge Carson, the problem here is that giving the one unbalanced instruction that limited good faith consideration to Dr. Kahn upends your ability to unwind what the jury did and didn't consider. And the implication of giving an instruction only for Dr. Kahn is that good faith would no longer be relevant to determining Nabeel's guilt. And that leaves you in a very different position in terms of trying to consider the prejudice that fell on Nabeel in this circumstance. Because then you don't know whether it felt that it had to set aside good faith considerations entirely. And the instruction was clear in limiting it to Dr. Kahn. And so it's very problematic to have circumstances. And you see this bubbling up through the cases, starting with the district court decision underlying the Laverne decision, the Second Circuit's decision in Vanos. These courts are talking about the fact that when you have employees of a prescriber, there needs to be a safeguard in the knowledge requirement that ensures that they're only being convicted if they fully appreciated the same type of guilty knowledge that the doctor had to have. And the government spent a week of trial testimony here educating the jury on what these standards would be. And there's nothing in the record that suggests that Nabeel would have been in a position to evaluate those in a meaningful way. Don't we look at who gets this good faith defense? And isn't the defense by statute available only to medical practitioners? Your Honor, I think that would be inconsistent with Laverne's instruction that defendants need to be treated, lay defendants need to be treated the same as doctors and that the standard needs to be as high for them. All Laverne is about is substantive evidence. That is sufficient evidence to convict. That is whether the physician or practitioner that was in the pharmacy, whether that individual had enough knowledge of the selling of scripts to be convicted. And we held in that case that that particular technician wasn't involved with the patients, didn't see the doctors, didn't know the doctors, didn't see the patient's charts. This is a whole different scene for your client, isn't it? Your Honor, there are parallels that we laid out in the sufficiency argument between the two, but the important point is that in determining what evidence would be necessary to convict, the court set the bar equally for lay defendants and prescribers. But even if Laverne didn't exist under the logic of the standard, it makes no sense to make it easier to convict the person who is least able to evaluate the prescribing decisions. And it actually invites a circumstance where the same set of prescriptions could result in the conviction of a lay defendant working for a doctor and the acquittal of the doctor himself. Well, Mr. Baker, would you agree that the instruction, the proper instruction for Dr. Khan on good faith would be objective, good faith. In other words, a reasonableness sort of instruction. Is that the kind of instruction that your client should have received? Because the proposed instruction was purely subjective. So are you saying he deserved an objective instruction? And if he and if he did, what would that look like? So, Your Honor, our argument is that reversal would be required here because he didn't receive at least the same instruction as Dr. Khan did on good faith, the same type. But the Dr. Khan instruction is an objective instruction based on medical, his medical knowledge. And that wouldn't really apply to your client because your client's not a doctor. But, Your Honor, it would be easy. Oh, sorry. No, go ahead. Go ahead. It would be easily modified. And an example would be both the instructions given in Laverne, the instruction. And then if you want to use an objective instruction, the decision from the Second Circuit in Vamos explains that. Counsel, I'm not saying I want to. I was asking you if you if you had to have an objective instruction. No, I apologize by saying what you want, Your Honor. But what I mean is the the means of instructing for a lay defendant like Nabil is set forth in Vamos, where there again in the Second Circuit considered the circumstances of a non medically trained defendant and modified the good faith instruction. And you would have three three basic requirements for a good faith instruction for a lay defendant. You'd say that they acted in good faith reliance on a doctor to prescribe within the boundaries of legitimate medicine. If you wanted to make it objective, you would add the word reasonably relied. The burden is on the government to prove that they did not act in good faith. And that as in Vamos, you would say that you consider the defendant's position, training and knowledge and evaluating their good faith. And so it's a it's not a difficult task to craft an instruction that indicates that if you choose to go the route of reasonableness and you followed Vamos to indicate that a defendant like Nabil needs to have. Well, it may not be that hard to craft. But did defense counsel at trial craft it and present it to the court? Your Honor, Nabil's proposed instruction tracked an instruction that followed what Judge Martin had given. And well, no, I understand that. But that was a subjective instruction you're talking about. Well, it's easy to come up with an objective one. But did anyone present one? Your Honor, they did not propose that. But my argument on that would track the the analysis of the Fourth Circuit in the Hurwitz case, which the government cited in its brief. And that would be this. And in particular, given the procedural posture of this case, that Nabil's counsel was clear that he was insisting on a good faith instruction. He proposed one. This is an area where the law is still sorting itself out. The district court took it upon itself to draft one. And once it did that, it should extend it equally to the two defendants so that he was not in a prejudicial position as opposed to Dr. Kahn and in Hurwitz. Isn't your proposal counter to Section 829 that specifically gives this type of defense to medical practitioners? I don't believe so, Your Honor, because the liability of a lay person working for the defendant, working for a prescriber has to match the mens rea required to convict the prescriber. Otherwise, you do get into the situation. I'll have an absurd result. Instructions and the charge and the elements required to convict your client required knowledge, actual knowledge. So there's mens rea here. And that had to be proven beyond a reasonable doubt. This is a conspiracy charge. Your Honor, the instruction given to Dr. Kahn specifically covered the conspiracy charge as well. It said the first part of it was. But I'm talking about your client, the charge against your client. And to say that somehow he was convicted without requiring the jury to find mens rea seems to me to be very different from the record we have. Your Honor, I don't believe so because of the role that the good faith instruction limited to Dr. Kahn played in undercutting the jury's consideration of good faith. You know, the government frequently finds refuge in the standard that the court applies of reviewing the instructions as a whole. And here that same standard of review hurts the government's position. Your Honor, I see my time is up. Thank you. Ready to hear from the government. Thank you. Good morning. Stephanie Sprecher, an assistant U.S. attorney representing the District of Wyoming. Your Honor, I'll just jump right into the good faith instruction. It's our position, as the court has pointed out, that a good faith instruction would not have been appropriate for a lay person. And in this case, Nabil Khan was a lay person. The good faith instruction was for Shaquille Khan so that the jury had an opportunity or a direction on how to evaluate his mens rea. Not as mens rea, but how to evaluate how to apply the knowing mens rea for Shaquille Khan versus Nabil Khan. As Judge Briscoe pointed out, the instructions as a whole given to the jury told the jury that they had to find out they had to find that Nabil Khan actually knew, actually knew that these prescriptions that his brother were writing were bogus and that they were for the purpose of distributing these prescriptions outside the usual course of medical practice and for not for a legitimate medical reason. The lack of a good faith instruction meant necessarily that the jury had to assess and apply the knowing mens rea requirement based on all the other instructions. And as you'll see in our brief, we talked about the different instructions that were given about the knowing mens rea requirement, which included instruction number 25, which indicated that to convict either Shaquille or Nabil of conspiracy, the jury had to find that the respective defendant knowingly and deliberately arrived at some type of agreement and understanding with another person that they would distribute or dispense prescription drugs. And I'll quit saying outside the usual course of medical practice and not for legitimate medical purpose, but that's the object of the conspiracy. Additionally, in instruction number 26, the jury had to find that Shaquille or Nabil came to a mutual understanding with another person to try to accomplish a common and unlawful plan, distributing the drugs. The jury also had to find Shaquille or Nabil was aware of the common purpose and was a willing participant with the intent to advance the purposes of the conspiracy. That's instruction number 28. So in other words, the jury had to find that Shaquille or Nabil intended for Shaquille's purported medical practice to distribute or dispense prescription drugs outside of the usual course of medical practice and not for legitimate medical purpose. I mean, don't you think it's sort of confusing, though, to say that one defendant can prop up some type of a good faith defense? You know, oh, I thought I was doing this properly for treatment. And then you have the office manager who has no medical training. I mean, the office manager is not is precluded from that, even though I mean, there's probably could be a presumption that they don't have the same knowledge. Right. And and the knowledge about how you prescribe medication is different. And the reason that Shaquille Khan got his good faith instruction was to tell the jury, this is how you evaluate what Shaquille Khan should have known as a reasonable medical practitioner and prescribing those drugs. But it was harder, essentially, for the government to prove that Nabil Khan actually knew actually knew that Shaquille Khan was prescribing these medications in a way that was outside the usual course of medical practice. And it wouldn't have made any sense to give a good faith instruction that looked like Shaquille Khan's for Nabil Khan to the jury. Why is it why is it harder? I mean, the instructions say you have to prove the same thing as to both of them. It does. So why is it harder for for Nabil? Why is it harder to give a good faith instruction or harder to convict him than the doctor? Because we had to prove that he actually knew not that just he was trying to meet the standards or the thresholds of the medical practice, which just fell short. If Shaquille, if the jury had found out that found that Shaquille Khan was actually trying, really trying to meet the standards of medical practice, but he made a mistake and fell short, then they could have acquitted him and let him go. And if that was the case, and they believe that Nabil Khan was relying on his brother to prescribe these prescriptions in an ordinary course of medical practice, and they also could have acquitted Nabil. But in this case, they had to find and they did find that Nabil Khan didn't honestly believe that Shaquille Khan was prescribing on the up and up. My understanding, one of the arguments that Nabil Khan is making is that it's problematic, isn't it? Under the instructions given here that a practitioner may be acquitted based on objective good faith, but a non practitioner could be convicted. Why isn't that problematic? Well, that's not the issue before the court here. Well, it is, isn't it? Isn't the argument that the absence of a good faith instruction for Nabil Khan could produce that kind of a result? Only if they believed he actually knew that the prescriptions were issued outside the usual course of medical practice. And he has to have the intent to further the conspiracy and that he was distributing those drugs with his brother to others. And that couldn't happen. They couldn't have an agreement. They couldn't have a meeting of the minds if they both had different knowledge and different intent. So are you saying that that scenario couldn't possibly happen under the instructions that were given here? Not in these instructions. No, sir. You say that an objective instruction would be difficult, but what's difficult in giving an instruction that Nabil Khan had to reasonably rely on his brother, Dr. Khan, in carrying out his conduct here? What's so hard about that? It's not hard. And I shouldn't have said it would be hard. That type of instruction wasn't proposed. The type of instruction that was proposed for the court to consider was a subjective instruction. And that isn't correct. Well, OK. So I'm back to the question I asked Mr. Baker. I know that the subjective instruction was proposed. But was this argument made that if Dr. Khan got a good faith instruction, then Nabil Khan had to get one? I agree with Mr. Baker's characterization of how that conversation and the objections went in the jury instruction conference. It wasn't that it was unfair. It was just that they wanted one because Nabil got one. The one that they proposed wasn't necessarily an objective instruction, nor did they urge the court to give one on behalf of Nabil Khan. They wanted the subjective instruction. Does that answer your question, Your Honor? Thank you. All right. What's also important when evaluating what the jurors had to look at for the jury instructions on Nabil is instruction number 20. Because as you'll recall, the defense that Nabil was pursuing was that he was unintelligent and that he was unaware of what the rules were in medical practice. And as Mr. Baker set out, there's no information, no evidence that he went back into the patient rooms with the doctor and made decisions on what prescriptions were prescribed. His whole defense was, I didn't know what was going on. And because I didn't know what was going on and I relied on my brother, you should acquit me. But instruction number 20 addressed that defense. And it said that in addressing the defendant's intent, that knowingly means that the defendant was aware of his actions, realized what was happening around him, and did not act because of mistake or accident. It also said that they had to find that the act was done intentionally and not because Nabil acted negligently, carelessly, or foolishly. And so that instruction set up Nabil to argue, as he did, that he naively, maybe unreasonably, trusted his brother. But because he did that, and because he was mentally slow, he didn't realize what was happening around him, and he didn't intend to participate in this conspiracy. He was really just foolishly believing that his brother was doing the right thing. And that's the defense that Nabil Khan pursued. But the jury didn't buy it. And because the jury didn't buy it, they didn't believe, and even if we had given a good faith instruction, whether objective or subjective, they didn't believe that Nabil Khan didn't know that his brother's prescriptions were bogus and that they were prescribed outside the usual course of professional practice. Anything more? This is sort of a question about the sufficiency argument that was made. Is it your position that the fact that Nabil Khan was in possession of roughly a million dollars and all of these firearms that were traded for services, that that indicates his active participation in the scheme? Those are facts and evidence that came in that supported it partially, but there was a lot of other facts and evidence that came before the jury that supported it, his knowing participation. I'm just curious, as your thought about whether those type of facts can support, you know, be part of the calculus, because it seems like Mr. Baker's position is, hey, it's legal to have a million bucks, and it's legal to be in a house with the 49 guns. And I'm just curious how those, you know, in a vacuum, maybe it's legal, but if you combine them with other facts, do they tend to show, for purposes of sufficiency, that he was a knowing participant? Right. That was our point in the trial that we made, and that was also the point in the briefs that we made, that every one of these things that Nabil Khan pointed out that didn't, he said, didn't support the fact that he knowingly participated in the conspiracy, in isolation, that might be true. But when you take all the facts and circumstances that were presented to the jury, and given reasonable inferences, and reviewing the evidence in favor of the jury's verdict, all of those things, including the possession of a million dollars of cash in the state, being armed with 49 firearms, carrying a firearm while in the medical office, threatening people with a firearm in the medical office, appraising firearms and accepting firearms in trade for prescription medication, in addition to many other things, indicated that he absolutely knew what his brother was doing and agreed to participate in that. I'd also like to just mention, as we do in our brief, that one of the biggest obstacles that Nabil had to overcome, there was two, in convincing the jury that he didn't really know what was going on, is that in 2013, he authored a form called a drug addiction statement. And that form, although probably not legally binding, was not unsophisticated. It was a form that he presented to patients to sign and they had to sign that before they were able to get prescriptions. The form itself said a lot of different things, but one of the most important parts of the form was that the patients had to agree that Shaquille Khan was not now and never has been a drug dealer, and that if I ever say that to anybody I know or don't know or police, that I'll be on the hook to pay Shaquille Khan $100,000 in damage. And although it may have been non-enforceable, many patients testified, or at least several patients testified, that they believed that it was possible for the brothers to come back on them and make them pay that money. Additionally, the other fact that the jurors heard about was a phone conversation that Shaquille Khan had with Nabil Khan in front of Lynn Khan. And this is what we call the Dundarski pill incident in 2016. Nabil Khan, excuse me, Shaquille Khan and Lynn Khan had been routinely filling these Dundarski patients with prescriptions in Wyoming and then sending them to Arizona so that they could avoid detection from the PDMP. And on this particular occasion, Shaquille Khan, or Lynn Khan, had raised the rate of these prescriptions, and when the Dundarskis found out the rate, they couldn't pay it. So literally, Lynn and Shaquille Khan were left holding a bag of drugs. So while Lynn and Shaquille were together, Shaquille placed a phone call to Nabil Khan, telling him the situation and telling him he had an idea that he should sell these pills to another customer who could sell the pills down the road. After that conversation, Shaquille Khan got off the phone, made a phone call to that customer, and then he and Lynn Khan packaged up the drugs and sent them off. And although Mr. Baker makes the argument, and so did Nabil Khan at his trial, that Lynn Khan didn't hear who was on the other end, there was a reasonable inference taken from the circumstances, but it was Nabil Khan on the other end, and that he and his brother decided that that was the right thing to do. Just to, since you mentioned Lynn Khan, was she ever charged? She was, Your Honor. She came in and pled guilty to the conspiracy charge right before trial. Thank you. On the mistrial issue, was it error for the district court to rely on the time and expense devoted to the trial as a reason to deny the mistrial? That's in Ms. Shaquille Khan's case. Oh, I'm sorry. I'm mixing up the cases. I do a lot. I'll ask you that in the next one. Okay. If there are no further questions, I'll return my time to the court. Thank you. Judge Briscoe, would you indulge me for one question? Of course. Mr. Baker, I was asking the United States Attorney about the evidence of the million dollars and all these guns that were in the house, in your client's house. And I'm just wondering if you would agree that looking at those two facts, the fact that they found those in his presence in a light most favorable to the government, if that tends to show that he was a participant? I don't believe so, Your Honor. I think it was prejudicial for it to come in and should have under the Fourth Amendment. But I don't think it tends to show that because that's a home that was owned by Dr. Khan. Nabil was staying there. But again, you don't have the inference that he was doing anything criminal. You just had the inference that his brother was running a cash-only medical clinic. Okay. All right. Thanks. Thank you. Thank you both for your arguments. This case is submitted.